We will proceed to hear our argument in the case of the United States of America v. Hodge. Mr. Villegas? Good morning again, Your Honors. My name is Gabriel Villegas. I am appearing on behalf of the appellant, Mr. Richard Hodge Jr., and I would ask to reserve four minutes for rebuttal. Granted. Thank you. May it please the Court, the primary issue today is whether or not this Court should consider or should require the District Court to have considered a resentencing, Mr. Hodge, on count three in accordance with the First Step Act. This Step Act is— Well, you're putting the rabbit in the hat, David, when you say in accordance with the First Step Act. I mean, that's really the issue here is whether or not the First Step Act requires that. It is, Judge. And this Court has spoken clearly in aviles and whether or not defendants who are on direct appeal can benefit from the FSA. Aviles doesn't help you, does it? It's clearly against you. Yeah, it hurts you. Aviles helps me in one way, footnote eight. And the two cases that the District Court cited, too, specifically Uriarte and Jackson. And really, if we wanted to cut to the chase, the Court could simply cut to our reply brief and look at the arguments set forth, because both of those cases together are very similar as Mr. Hodge. Are they really different, though, from Mr. Hodge? Because in both of those cases, the appellate courts disturbed in some way the 924C convictions in those cases, and it was remanded back for them to consider anew a sentencing because it didn't exist anymore. We're here. Our court on review of Mr. Hodge's sentence affirmed the 924Cs. And so there was nothing to do anew before the District Court. So aren't those significantly different rather than similar to your circumstance? That is certainly one distinction, yes. All three cases involved 924C convictions and, of course, this practice of stacking. And all three defendants were subject to this very harsh penalty that is now what the FSA is intended to relieve defendants of. But, yes, I agree. I think that there's also one other wrinkle the Court is probably aware of as well, and that is the limit that this Court had remanded Mr. Hodge's case. Yeah, that was pretty clear, wasn't it, Mr. Villegas? Well, at first, yes. But once the actual sentence was. . . What about at second? In second was the practice of actually the sentencing occurring. Our prior decision in this case not only did not disturb the convictions on the federal counts, it affirmed them, didn't it? It did. Okay. So what was the import and what was the clear language, or what was the clear language and what was the import of it, of the vacatur and remand that took place here? That the district court was to select. . . Double jeopardy had attached to at least two of the. . . Under territorial law, right? Yes, sir. The court, district court, was to decide which of the three counts to find our client guilty of, basically selecting so it didn't violate that double jeopardy clause. But the court was also to resentence, or as this Court referenced it, conduct the requisite resentencing. And that seems to be where the nuance matters. What is the nuance created, in your view, by the use of the word requisite? Yes, I think so. Because the district court was, I think, to a certain extent at a loss about, number one, what type of sentence should be imposed on count seven. But requisite is a modifier that is synonymous with required. Would you agree? I would. And the only thing that was required here, under the language of the supporting opinion, was for the court here in the District of the Virgin Islands to conduct resentencing on the remaining territorial firearm conviction, right? Well, now, that's the first time. . . That language of what you're saying to me is different than what the mandate said. In regard to the requisite resentencing, I didn't read that as saying just the requisite resentencing on count seven. It seemed as if, and if you read the amended judgment, the court revisited count seven and still had to decide, do I run this time consecutive or concurrent to the local counts? Do I run this time consecutive or concurrent to the Federal counts? And then we started, and of course the district court then had two separate hearings. Maybe I didn't make my question clear. What was intended was that there was no resentencing contemplated in the language of this court in Chapter 1 on appeal that would suggest resentencing on the Federal counts, right? Right. I don't think this court was aware of the FSA and the possible benefit to our client because this judgment, the mandate came back at least 15 months before the FSA came into effect, but for whatever reason, the district court didn't get around to resentencing our client until after the FSA was in effect. But even if the FSA was in effect at the time our court looked at this case, it still would not have disturbed the Federal sentencing. The sentences would have remained imposed as delivered by the district court, and therefore the ability to get relief would have been nonexistent. As to those counts, I understand the court's position. And my position is simply we believe Miller 1, Miller 2, and Davis allowed for the avenue to revisit the entire sentence because it was a multi-count charging document. You couldn't look at just count 7 in this tunnel, and the district court really felt like it needed the parties to brief the issue to see whether or not it did still have that discretion. But Miller is a sentencing package case. I know you raised that in the district court, but I don't think you raised it with us that way. We didn't. That's correct, Judge. We didn't raise it that way, but we still believe the combination of what would be a totality of the case would have required the district judge to revisit how all he had sentenced Mr. Hodge on all counts. So is it – I mean, clearly this is not, as Judge Schwartz's question indicated, clearly this is not a sentencing package doctrine case, right? It's not unless you – It hasn't been presented to us that way. It wasn't developed that way before the district court. Well, we did brief the de novo standard and Miller 1 and 2 and Davis and did reference the sentencing package doctrine when we went back before the district court to attempt to have this entire sentence revisited. How is that impacted in any way by the rather unique – that is, not only unique to the Virgin Islands, but unique to sentences imposed in St. Thomas where you have both territorial counts and federal counts appearing in the same indictment? How is that impacted in any way by the practice of issuing separate J&Cs? Well, I don't think it has any legal effect. It is more of a ministerial roadmap for the Bureau of Corrections, the Bureau of Prisons, and the U.S. Marshals when the judge decides I want you to serve your federal time first and then the transfer to local prison can occur. I do think, though, the judge is contemplating all counts because it's the same course of conduct, the same series of events. And I think what you just said makes sense, but not necessarily limited only to that administrative function. What of the existence of those two orders for appellate purposes? Could that make a difference? No. There is no significance for appellate purposes. Mr. Hodge's interest is ensuring that the entire sentence is revisited, and that's what the FSA, we believe the interpretation as a remedial act, was intended to do, benefit people like Mr. Hodge, who is being resentenced, even if it's in a limited way, so that he will be seen in the light of Uriarte. He will be seen in the same light as Jackson, and then the court can then give him the full benefit. Let me ask you really maybe a bottom-line question, Mr. Vargas. Are you taking the position before us, or are you arguing that we should read the word impose in Section 403B to mean the No. We danced around that in our opening brief. The language is clear in Aviles, and I don't know that there's anything in addition that I could give the court that would make the court think differently. So sentence was already imposed on Mr. Hodge, was it not? It was, but this court cited to Tomko, and I think that Tomko requires a sound judgment, and there was not a sound judgment in our case. Well, Tomko is all about how we review sentences of district courts. I just felt like Tomko reflected that when there isn't a sound judgment from the district court, like in this case, because double jeopardy had attached to at least two of the counts, that in turn put that re-sentence in the same light as a sentence, because that is what Congress intended. If Mr. Hodge and another defendant that is being sentenced for the first time after the FSA was enacted are sentenced differently, that disparity is what Congress was trying to avoid. And so that's why it's re-sentence defendants and sentence defendants should be seen in the same light and sentenced accordingly. Judge McKee, the clock is running down. Would you like to ask some additional questions? Well, my only concern is that it seems to me that the language of the DOS, and I'm quoting from it, we said, we agree imposing a sentence is the business of the district court. And it's pretty clear then that we have already held, in the presidential case, that the federal accounts were final and imposed at the time the district court imposed them, notwithstanding what came after. And that's why I'm having a hard time following your argument as to how we can disrupt that by applying the sentencing practice doctrine that hasn't really been developed here, and saying, well, it wasn't really imposed at the time the First Step Act was enacted. Can you help me with that? Well, I would have to go back to both Uriarte and Jackson because I felt like both of those courts in those cases highlighted why a re-sentence is more consistent with the congressional intent under the First Step Act because of the value of hindsight of how the Fair Sentencing Act was interpreted. And that is essentially the background norm, the background principle that Congress has at the time they create the act. So we believe, like in Mr. Hodges' case, cases that were set for re-sentencing were always intended to be part of that group of individuals that would benefit from the FSA. But we felt that the default position on retroactivity is that a sentencing statute is not applied retroactively unless Congress specifically says that it is to be applied retroactively. How does that impact you here? And, again, why doesn't that default position, along with our language in NFDS, basically mean that the federal accounts remain intact under re-sentencing? Because the federal accounts are part of a larger group of accounts, and they are interdependent, and that would be why they couldn't be singled out for considering some basis for retroactivity. Thank you, Mr. Villegas. We'll have you back on rebuttal. Ms. Blecher, am I pronouncing your name correctly? Blecher, all right. I was trying with what teeny bit of German I know to say it the way I thought it was supposed to be said, but I blew it. Go ahead. Good morning, Your Honors. May it please the Court, AUSA Jen Blecher on behalf of Appellee of the United States. As Mr. Villegas just indicated, Mr. Hodge is premising his entire argument on footnote 8 of the Aviles opinion that left open the question of whether the First Step Act is to be applied on re-sentencing. Well, he's also arguing a few district court cases, one of which or two of which you referenced just a few minutes ago before you came to the podium, but they, of course, are not binding on us. Yes, Your Honor, and those cases concern whether on a re-sentencing the First Step Act should be applied, which has not been addressed in this circuit and the government argues need not be addressed in this case because under Miller 2 Mr. Hodge's sentence does not qualify for a full de novo re-sentencing as he is arguing. Why do you say that? Why do you say it doesn't qualify for treatment in that way? Your Honor, in Miller 2 this Court stated that there's no default rule in this circuit as to whether when part of a sentence or judgment of conviction is vacated or remanded whether an entire de novo sentencing of all counts is required, and Miller 2 declined to lay down such a rule. What it did was discuss the sentencing package doctrine, which Appellant is trying to invoke here. That doctrine requires that the sentences at issue be part of a, quote, overall plan or otherwise be interdependent, and neither of those apply in this case. Didn't he also not argue sentencing package doctrine to us? I would agree that was not raised. It was briefed extensively before the district court and appeared to be the underlying argument of why re-sentencing should apply. And the government's response to the extent that Your Honors wish to consider that argument is that the district court on the first pass, when sentence was imposed under the meaning of a viles, treated the federal and territorial charges separately. Two different judgment and commitments were entered. Under 18 U.S.C. 3584, the district judge had the discretion to determine whether those sentences would run concurrently or consecutively. He chose to have each set of sentences run consecutively. On the first appeal, Mr. Hodge did not challenge that that exercise of 18 U.S.C. 3584 was improper or otherwise an abuse of discretion. This court affirmed the federal judgment and conviction, and that was a full stop. This court, however, remanded territorial judgment and conviction after vacating two of the three charges. As was extensively briefed below, and the district court agreed, there was no plan or interdependence that required revisiting the Federal sentences on the federal counts. Also, our mandate didn't contemplate it, did it? I mean, because the judgment reads affirmed on the Federal counts vacate on some of the territorials, correct? That's how the government understands it, Your Honor. And Mr. Hodge has not made any proposal of how any interdependence would even apply. The only relief that's being sought here is the shortening of the sentences pursuant to the First Step Act for the second 924C conviction. That is not reliant on any sort of interdependence or overall plan. When you use the word interdependence, what do you mean? I'm referring to the language used in Miller 2 where you had a situation there where there were a series of counts. They were all brought under Federal law. There was a sentencing enhancement that had been determined to have been improperly applied, and that would have modified the entire sentence across the board. So the reason that, or at least one of the grounds on which the court had remanded in that case was applicable to all the sentences, even though those underlying sentences were not otherwise disturbed. And in that situation, you had a plan or interdependence between the counts that required revisiting all of them in order to apply that change in the upward enhancement that had been overturned. The court also speaks about instances where in the initial imposition of sentence the judge may have made a determination as to how the charges were to, or the sentences were to be imposed in relation to one another. Here there's a clear bifurcation between the Federal and the territorial counts. There is clearly no interdependence. They're both entered separately as judgments and commitments. Would your argument be different if it has been pointed out by the Chief Judge that it was a single judgment? If this trial happened to take place on St. Croix? I don't think it would change, Your Honor, because the First Step Act and Miller II didn't contemplate this. We're in a unique situation where you're dealing with Federal and territorial charges being handled by the same judge. Under a typical scenario, the Federal judge might be contemplating future State charges when imposing sentence. And so the discretion afforded under 18 U.S.C. 3584 to have sentences run consecutively or concurrently would apply regardless of whether all the charges are Federal charges, if it's Federal and territorial, and whether they're all brought in the same indictment and imposed in the same judgment commitment. If the district judge in his discretion makes the determination that two separate counts are to run consecutively, that's a determination in our view, the government's view, that the two separate sentences were not interdependent for purposes of applying Miller II. What would have happened if our court remanded one of the 924 counts for resentencing? Or alternatively, what would have happened if we remanded the Hobbs Act count? Would either of those scenarios have triggered the applicability of the First Step Act here? Well, Your Honor, to the extent that one of the 924C counts was remanded, then the First Step Act would have triggered the application of the Hobbs Act. And so that's a consideration there because of the nature of the stacking, the way that those two sets of sentences would be imposed. Because a vacate and remand basically renders the first sentence a nullity and we've got to impose? I don't think that... We don't, the district court. Sorry. Your Honor, I wouldn't say that the act of vacating one charge in a Federal, a set of charges in this case had the two 924C sentences run consecutively and then concurrently with sentence under the Hobbs Act. And where you have two concurrent sentences, it may be the case that the district judge may want to revisit how that would work if they're no longer, if one of those counts is vacated. But, and given that they arise out of the same underlying conduct, there might be a need to revisit those when they're all brought under Federal law. However, in this case, if the, that's not the situation that we're dealing with right here. The Federal counts were affirmed. There was no indication that the decision to run them concurrently and enter them separately by the district judge was an abuse of discretion or in any way improper. And so in this situation where you only have territorial counts being vacated, the packaging doctrine would not apply. There's no resentence and the First Step Act would not be considered under a VLIS. We, we focus largely on the resentencing package doctrine and it appears that the appellant may have abandoned the argument that finality is not what was contemplated by Congress in passing the First Step Act and referring to imposition of a sentence. I'll just briefly address that the, the case that's cited in the reply brief, Havens, it's in addition to being non-binding authority, doesn't actually support the proposition that it is cited for. In Havens, similar to this Court in Aviles, the Court there used plain language, a word's plain meaning to interpret language in a different section of the First Step Act, Section 402, to say that entry of the conviction means when judgment is first passed down. That's the safety valve retroactivity? That's in the safety valve. And so there we're talking about unlike imposed or finality, we're talking about conviction, which is a finding of guilt? Correct, Your Honor. And as the, the Court there acknowledged, there's different language in 401 and 403 versus in 402 and that would be the distinction, that it's contrasting entry of a, the actual judgment of conviction, the finding of guilt by the jury versus the imposition of sentence by the district court. And the last thing I would say is that to the extent that appellant is still arguing that Congress meant to use, impose to mean finality, elsewhere in the First Step Act, Congress explicitly refers to finality. In amending the substantive language of 924C, Congress changed it to refer to a conviction that has become final. So where Congress did want to refer to finality, it did so in very clear and explicit terms. It did not do so in Section 403C for purposes of application of the First Step Act. In, in the government's brief, I'd like to just turn your attention for a second to the 2106 issue. Yes, Your Honor. There's an, an argument that the 924C counts aren't properly before us because this is an appeal from a resentencing of the territorial counts. That's correct, Your Honor. It's okay. So I read your brief right. But we know that the district court, at least orally, when asked by defense counsel to consider the First Step Act, said the federal counts are going to remain untouched and essentially gave a ruling, your request that I apply the First Step Act is denied without using those words. It then enters the new judgment in the territorial, in the form of the territorial judgment that the only reference to the Federal convictions and counts was the fact that the territorial counts should run consecutive to the Federal. But are, is it your position that he couldn't appeal that sentencing issue concerning the 924C? That's what your brief seems to say. That's what you suggest I read correctly. Is that your position? Your Honor, that, that is what the brief says and that is the government's position. How is that, how can that be? He, he, he had a ruling on the 924Cs. He's unhappy with it. He appealed it. It's the government's position that the ruling or the issue of the 924Cs in the Federal judgments generally were not properly before the district judge either. We do understand that he requested briefing on the question of whether they would be brought into an entire resentencing because of the remand on the territorial counts. However, the, this court did not disturb the initial finding on the Federal charges and the proper course for appellant at that point after they were affirmed was to then appeal them. I will say that to the extent that, you know, it's the government's position it is not properly before this court, but to the extent that your Honors were to take a different view and consider it, it is the, the government's position that nothing compels exercise of jurisdiction under 2106 because the, the very retroact, the non-retroactive nature of the First Step Act and the Supreme Court in Diehl and even this court's holding in Aviles seem to indicate that there's nothing fundamentally unjust about, about defendants who have previously been sentenced under the prior interpretation of 924Cs. Well, isn't the government's position that the district court lawfully declined to apply the First Step Act because the sentence had been imposed and undisturbed so therefore there's been no change in law? That would have triggered 2106 relief? That also remains the government's view that there has been no intervening change in law. I don't have any more on 2106. Me neither, thanks. I just don't want to hear the other arguments. Let me, let me ask one question, however, that does not go to the issues just addressed in the questions from Judge Schwartz and for that matter does not really go to the ultimate resolution of this case, I think, at least as both sides have argued it. It's a matter of practice. It's a matter of local practice. And I'm curious to know if from the government's standpoint there are any practical or for that matter potential jurisprudential issues that can arise from the entry of two separate J&Cs, as occurred in this case, as opposed to one, as again I understand the practice to be in St. Croix. It seems to be rather unusual to have a clerk's office that is serving district wide put to the responsibility of having to process such judgments in different fashions. It is, I think, within the authority of this court to promulgate a supervisory order of practice with respect to such a matter, but we don't do that very often. Do you know if the government has, if not a position, any concerns about the disparate practices that I've described? Well, Your Honor, having not briefed that issue, I, standing here today, cannot address whether the, I have no knowledge myself as to whether there is a position. That's really what I'm asking, whether you have any knowledge of it. This is not an issue that's been raised in this case, but it does or at least can impact on our appellate review if we were to have, as we do in this We see civil cases all the time where they're appended state claims, but along with federal claims. But on the criminal side, this is somewhat different. But if you're not aware of any potential problems, then I can rest easy. I have no knowledge, Your Honor. I see my time has expired. I'm happy to speak to them if you would still like me to. But in terms of actual knowledge of any issues that the government has with this practice, I cannot say. All right. Thanks very much. Mr. Mead, you guys rebuttal? Briefly, Your Honors. I in no way intended to abandon any arguments that we presented in our briefs. The 15 years that Mr. Hodge faces because he didn't receive the benefit of the FSA has to be preserved in every possible way. It has been argued in the past that imposed means finally imposed. And I would encourage the court to find any way to make sure that that language is broadened so that more defendants, not just Mr. Hodge, but to really honor the remedial intent of Congress in creating the FSA can benefit as many defendants as possible. I don't dispute that. But you will recall Judge McKee's question regarding the statutory requirement that if Congress intends that there be some kind of retroactive application, it is to say so. And Congress did not do so when it amended the statute and gave us the first step back. So how do you get around that? I mean, how do you argue policy, that is the remedial purposes of this amendment, when you are confronted with the specific language of a law that says how Congress is to express such intent explicitly? Sure. And it isn't just the direct language because, again, it's inferred that Congress can use this background principles and have knowledge that because of how the Fair Sentencing Act was interpreted, that ultimately could result in defendants who are being resentenced to receive that benefit. They, in turn, would know in creating this FSA that we would contemplate defendants who have not yet been sentenced or are being resentenced would receive the benefit because we want defendants who are being resentenced and sentenced for the same crime on the same day to receive the same sentence and avoid any disparities. Your condition precedent, though, for your argument is that there was an actual resentencing on the 924Cs, right? Yes. That's correct. Okay. Thank you. That's all I have unless the Court has any more questions. Judge McKee, do you have questions? Thank you, Chief. No, I have none. All right. Thank you. Thank you very much, counsel, for your helpful arguments. I am pleased to have had the assistance of your arguments as are my colleagues. We will take the matter under advisement, and, Judge McKee, we will be tuning in with you shortly to conference the matter. Okay. Should I stay on the line, or will you call me back? We'll call you back. Thank you. We'll ask the clerk to adjourn the proceedings.